UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

BOBBY BOSTIC, )
 )
    Plaintiff, )
 )
vs. ) Case No. 1:07CV00014 ERW
 )
DR. GLENN BABICH and )
DEBBIE HARDING VINSON, )
 )
    Defendants. )

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants Dr. Glenn Babich and Debbie Hardin Vinson's Motion for Summary Judgment [doc. #19] and Plaintiff Bobby Bostic's Motion for the Appointment of Counsel [doc. #25].

*Pro se* Plaintiff, Bobby Bostic ("Plaintiff"), has brought the pending action under 42 U.S.C. § 1983, seeking monetary damages and other relief from Dr. Glenn Babich ("Defendant Babich") and Debbie Harding Vinson ("Defendant Vinson"). Plaintiff alleges that Defendant Babich and Defendant Vinson (collectively, "Defendants") violated his rights under the Eighth Amendment.

## I. BACKGROUND FACTS[1]

The Court begins by noting that Plaintiff has submitted a Statement of Disputed Factual Issues [doc. #24]. However, the four statements Plaintiff submits are short, unsubstantiated

---

[1] The Court's recitation of the facts is taken from Defendants' Statement of Uncontroverted Material Facts in Support of Their Motion for Summary Judgment [doc. #19-3].

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

phrases that generally assert that the treatment he received for his medical conditions was neither proper nor meaningful, and that he still suffers from conditions the treatment addressed. To demonstrate that a genuine issue of material fact exists, a plaintiff must set forth affirmative evidence and specific facts showing there is a genuine dispute on the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e)(2). Plaintiff has submitted neither an affidavit or other evidence sufficient to create a genuine dispute, and accordingly, the Court will consider the Statement of Uncontroverted Material Facts submitted by Defendants to be admitted by Plaintiff for the purpose of the pending motion.

### A. *DEFENDANT BABICH: PLAINTIFF'S IRRITABLE BOWEL SYNDROME*

On approximately January 28, 2003, Plaintiff was transferred from the Crossroads Correctional Center to the Southeastern Correctional Center (SECC). Defendant Babich first treated Plaintiff at the SECC on March 3, 2003 for Plaintiff's complaint of "loose stool." Defendant Babich prescribed aluminum/magnesium/simet chew tablets for a period of 21 days and aluminum antacid tablets. From March 3, 2003 through June 26, 2003, Plaintiff was seen by the medical staff at the SECC, and his medical records report no stomach or stool related complaints.

On June 29, 2003, Dr. Gregorio Rodriguez saw Plaintiff for multiple medical problems. Among Plaintiff's complaints was occasional blood in his stool and soft bowl movements. The doctor assessed Plaintiff's abdomen and reported it to be soft without masses. He also performed a rectal exam that revealed no tumors. Dr. Gregorio Rodriguez then prescribed medication for Plaintiff's complaints and made a referral request for a lower "GI." This request was denied.

On July 8, 2003, Defendant Babich saw Plaintiff and recorded Plaintiff's complaints of constipation and occasional blood in stool. Defendant Babich made a referral request for Plaintiff

2

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

to undergo a colonoscopy, and this request was granted. From July 8, 2003 until August 28, 2003, Plaintiff was seen by the medical staff at the SECC, but his medical records report no complaints related to his stomach or bowels. Plaintiff's colonoscopy was performed on August 29, 2003 by Dr. Terry Nold at the Capital Regional Medical Center, in Jefferson City, Missouri. Dr. Terry Nold concluded that Plaintiff's colonoscopy was normal, and diagnosed Plaintiff with constipation and Irritable Bowel Syndrome ("IBS"). Dr. Terry Nold recommended that Plaintiff increase his use of Metamucil along with other medications (including antispasmodic psyllum and levsin) to control his IBS symptoms.

On September 9, 2003, Defendant Babich met with Plaintiff regarding Dr. Terry Nold's assessment of IBS and the treatment plan he had proposed. On December 19, 2003, Dr. Gregorio Rodriguez saw Plaintiff to followup on his IPS condition. Plaintiff reported that one type of medication did not help him, and Dr. Gregorio Rodriguez prescribed other medications.

On January 22, 2004, Plaintiff's medical records report that Plaintiff failed to appear for his scheduled appointment with Defendant Babich. Plaintiff did meet with Defendant Babich on January 26, 2004, and Defendant Babich assessed Plaintiff for his IBS and other medical complaints. Plaintiff's medical records contain no further complaints concerning his IBS until June 12, 2004, when he requested and received a refill of metclopramide. Plaintiff's medical records also contain no further complaints to Dr. Babich concerning his IBS until Plaintiff began his first of a series of hunger strikes on October 14, 2004.

On October 14, 2004, Defendant Babich admitted Plaintiff to the Transitional Care Unit, and directed that staff monitor Plaintiff's vital signs and condition (including mental status and gait, along with monitoring Plaintiff's skin and urine for dehydration) while Plaintiff pursued his

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

voluntary hunger strike.[2] On or about October 18, 2004, Plaintiff ended his hunger strike and he was seen by Defendant Babich. It was noted that Plaintiff tolerated food without a problem and showed no signs of distress. Plaintiff was discharged from the Transitional Care Unit to his housing unit.

On October 28, 2004, Plaintiff made multiple medical complaints and was seen by Defendant Babich. Plaintiff requested a no-bean diet because he claimed that the beans caused him to experience constipation. Defendant Babich explained to Plaintiff that the beans were not the cause of his constipation, and that the cheese and peanut butter he was requesting would only worsen his constipation. Defendant Babich assessed all of Plaintiff's complaints, prescribed Levsin and Latulose to treat Plaintiff's IBS and constipation, and adjusted his medications.

On November 23, 2004 and November 30, 2004, Plaintiff complained to medical staff of loose stool. On December 2, 2004, Plaintiff reported to Defendant Babich that he had not taken his prescribed IBS medication for three weeks. Defendant Babich again adjusted Plaintiff's medication and decreased Plaintiff's prescription of the Lactulose. On December 28, 2004, Plaintiff failed to appear for his scheduled appointment with Defendant Babich.

In July 2005, Plaintiff's medical records report that Plaintiff was diagnosed with a hemorrhoid. Plaintiff was referred to a specialist for his hemorrhoid, and that referral was approved. Subsequently, Plaintiff underwent hemorrhoidal surgery in October of 2005. Plaintiff remained in the Transitional Care Unit during his surgical recovery. Plaintiff's medical records

---

[2] Plaintiff stated to Defendant Babich, and others, that his hunger strike was due to the fact that he was a vegetarian and he did not want to eat a diet of beans. Plaintiff's medical records state that Dr. Babich explained that beans are an approved protein substitute on a vegetarian diet and that because his vegetarian diet was a personal preference, Plaintiff did not have to eat beans.

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

reveal no complaints regarding his IBS to Defendant Babich, or any other medical staff member, from October 2005 through December 2005.

On January 14, 2006, Plaintiff began his second hunger strike, and Defendant Babich ordered him to be admitted to the Transitional Care Unit during his strike. Medical staff monitored Plaintiff's vital signs and medical condition until Plaintiff ended his hunger strike on January 18, 2006.

In March 2006, Plaintiff returned to the care of the specialist for his hemorrhoids and underwent a second surgical procedure. Defendant Babich assessed and treated Plaintiff on two occasions in April 2006, while Plaintiff was recovering from this surgery. Plaintiff was transferred from SECC to Southcentral Correctional Center on approximately September 14, 2006. Plaintiff's medical records from the SECC report no additional complaints related to his IBS condition or further care related to this condition by Defendant Babich.

### B. *DEFENDANT BABICH: PLAINTIFF'S SKIN LESIONS*

Plaintiff first saw Defendant Babich on January 26, 2004 for the treatment of his reported skin problems. Defendant Babich assessed a vesicular rash on Plaintiff's wrist, forearm, and abdomen, and he prescribed a hydocortisone cream. Defendant Babich requested that Plaintiff undergo a freezing treatment for his skin condition, and this request was approved.

On February 25, 2004, Plaintiff was seen by Dr. Gregorio Rodriguez for complaints of inflamed nodules on his scalp and wrist. Plaintiff's records report that he specifically requested treatment by Defendant Babich.

Defendant Babich saw Plaintiff again on March 3, 2004 for treatment of his varied skin problems. Defendant Babich assessed Plaintiff with eczema and scalp cellulites. Defendant

5

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Babich prescribed hydrocortisone cream, dicloxacillin, and triancinololne topical cream. Defendant Babich also scheduled a skin biopsy if Plaintiff's condition did not improve.

On March 5, 2004, Defendant Babich applied the freezing treatment to Plaintiff's forearm and requested a followup appointment in two weeks. The area of the treatment was cleaned and the dressing was changed by medical staff on a regular basis from March 8, 2004 to March 19, 2004. On March 19, 2004, at the followup appointment, Defendant Babich concluded that the lesions on Plaintiff's wrist had responded to the freezing treatment. Defendant Babich excised tissue from Plaintiff's arm for a skin biopsy and sent the tissue to pathology. The pathology report concluded that the tissue was suggestive or a benign freckle, with no definite inflammatory/neoplastic process identified.

In May 2004, Plaintiff requested a refill of his topical skin medication for his scalp and arms, and he reported that the bumps on his scalp were almost completely gone. Following his first hunger strike, Plaintiff was seen by Defendant Babich on October 28, 2004. Plaintiff had numerous medical complaints, including skin lesions on his palms and soles.

On December 30, 2004, Plaintiff complained of lesions on his left arm and penis. Defendant Babich ordered a second biopsy, which was performed on January 6, 2005. The pathology reported a diagnosis of granulomatous dermatitis, and an absence of fungal or bacterial infection. Defendant Babich reviewed these pathology findings with Plaintiff on January 17, 2005.

On February 1, 2005, Plaintiff complained of pigmented lesions on his penis, forearms, wrists, and palms. Defendant Babich requested and was approved to conduct additional lab work to determine whether the Plaintiff suffered from a connective tissue disorder. Plaintiff's blood was drawn, and the testing reported normal findings. These findings were shared with Plaintiff.

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Plaintiff's medical records from May 2005 until his transfer to Southcentral Correctional Center on approximately September 14, 2006 do not include any further complaints to Defendant Babich or requests for treatment of skin lesions or rashes. Other prison medical staff resumed Plaintiff's care for his skin complaints. Plaintiff underwent an additional biopsy, which agin reported normal findings, and Plaintiff was issued refills of medications to treat symptoms of rashes.

### C. DEFENDANT BABICH: PLAINTIFF'S DENTAL PROBLEMS

In June 2004, Plaintiff had two teeth extracted, without any complications. On June 13, 2004, Plaintiff saw Defendant Babich for the first, and only time regarding his dental problems. Plaintiff complained of pain from the prior extraction. Defendant Babich assessed Plaintiff's complaint and issued Ibuprofen as was ordered by the physician who performed the extraction. Plaintiff did not see Defendant Babich for his dental problems at any other time while Plaintiff was confined at the SECC, but did see other medical staff for his ongoing dental complaints.

### D. DEFENDANT VINSON

In November 2004, Plaintiff filed an Informal Resolution Request ("IRR 04-1515"), requesting that the medical staff provide him with a vegetarian meal tray. Defendant Vinson was the Director of Nursing at SECC, and she responded to and denied Plaintiff's IRR 04-1515. Defendant Vinson concluded that Plaintiff's vegetarian diet was a personal choice, and was not medically required. The records reflect that Plaintiff pursued IRR 04-1515 through the inmate grievance appeals, but Defendant had no other involvement with IRR 04-1515 except for this initial denial.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Also in November 2004, Plaintiff filed another Informal Resolution Request ("IRR 04-1506"). In this grievance, Plaintiff contended that he did not receive adequate medical followup care after his first hunger strike. Defendant Vinson responded to and denied IRR 04-1506 as Plaintiff's medical status and condition was monitored in the Transitional Care Unit during and at the conclusion of Plaintiff's hunger strike. While Plaintiff pursued IRR 04-1506 through the inmate grievance appeals, Defendant Vinson had no other involvement with IRR 04-1506.

**II.    LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (*quoting* Fed. R. Civ. P. 1). "By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e)(2). When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**III. DISCUSSION**

Plaintiff alleges that Defendant Babich denied Plaintiff medical care in violation of his Eighth Amendment rights, and that Defendant Vinson violated his rights when she denied two grievances he filed. The Court will consider the claims against Defendant Babich and Defendant Vinson separately.

*A. DEFENDANT BABICH*

Plaintiff claims that Defendant Babich violated his rights when he failed to diagnose or treat his IBS, skin lesions, and dental problems. The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners" is prohibited by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To determine if a prison doctor has been deliberately indifferent, the Court must consider "both an objective an subjective component." *Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001). The objective component requires a plaintiff to demonstrate that he "suffered objectively serious medical needs," while the subjective component of the claim requires that a plaintiff demonstrate "that the prison officials actually knew of but disregarded those needs." *Id.* The doctor's knowledge of a medical need can be established circumstantially, and is established if the need "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995).

The Eighth Amendment does not limit physicians from "exercis[ing] their independent medical judgment." *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) (*quoting Dulaney v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Inmates do not a have constitutional right to any particular type of treatment. *Long v. Nix*, 86 F.3d 761, 765 (8th

10

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Cir. 1996). A mere disagreement with the course of treatment or a physician's medical diagnosis fails to state a claim under the Eighth Amendment. *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990); *Lair v. Oglesby*, 859 F.2d 605, 606 (8th Cir. 1988).

Plaintiff has produced no "evidence to support his claim that the treatment provided . . . [for his IBS] was constitutionally inadequate." *Meuir*, 487 F.3d at 1119. Defendants have provided the Court with comprehensive medical records which indicate that treatment was provided for Plaintiff's many complaints. The undisputed facts demonstrate that Plaintiff's IBS was diagnosed by Defendant Babich. The facts show that Defendant Babich treated Plaintiff's IBS through fiber substitutes, medications, and medical advice concerning Plaintiff's diet. Plaintiff's choice to stop taking his medication and to go on hunger strikes was contrary to the medical advice Defendant Babich gave Plaintiff, and the undisputed facts demonstrate that Plaintiff was seen regularly by Defendant Babich and the rest of the medical staff for his complaints. Given this contrary evidence, Plaintiff "cannot create a question of fact merely by stating that [he] did not feel [he] received adequate treatment. *Id.* (*quoting Dulaney*, 132 F.3d at 1240).

Plaintiff has also produced no "evidence to support his claim that the treatment provided . . . [for his skin lesions] was constitutionally inadequate." *Meuir*, 487 F.3d at 1119. The undisputed facts demonstrate that Defendant Babich treated Plaintiff's skin complaints through prescribing topical creams and medicated ointments, and performing a freezing procedure. Defendant Babich also performed two skin biopsies, and the pathology reports from both biopsies reported normal findings. Finally, Defendant Babich treated Plaintiff's skin complaints by performing blood work, the results of which were normal. Given this contrary and undisputed evidence, which demonstrates Defendant Babich's extensive treatment of Plaintiff skin complaints,

11

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Plaintiff "cannot create a question of fact merely by stating that [he] did not feel [he] received adequate treatment. *Id.* (*quoting Dulaney*, 132 F.3d at1240).

Plaintiff's claims regarding his dental problems also fail as Plaintiff has produced no "evidence to support his claim that the treatment provided . . . was constitutionally inadequate." *Meuir*, 487 F.3d at 1119. Defendants have provided the Court with comprehensive medical records which indicate that the treatment for most of Plaintiff's dental problems were provided by prison dentists, and not Defendant Babich. Defendant Babich's only involvement with Plaintiff's dental problems occurred after two of Plaintiff's teeth had been extracted, when Plaintiff was seeking medication for the pain he was experiencing. The undisputed facts demonstrate that Defendant Babich provided Plaintiff with Ibuprofen, as had been ordered by the prison dentist. Plaintiff has not provided the Court with any evidence that Defendant Babich was deliberately indifferent to Plaintiff's dental needs on this one occasion in which Defendant Babich provided dental treatment to Plaintiff.

Plaintiff's allegations that Defendant Babich failed to diagnose or treat his IBS, skin lesions or dental problems are not supported by Plaintiff's medical records and treatment history. There is no issue of genuine material fact, and summary judgment must be granted for Plaintiff's claims against Defendant Babich.

### A. DEFENDANT VINSON

Plaintiff has alleged that Defendant Vinson "is responsible for the medical care generally and for answering inmates' medical complaints, as well as arranging specialized care outside of the prison." Plaintiff has not alleged that Defendant Vinson was personally involved in providing any of Defendant's medical care, or that her care was in any way deficient. Instead, Plaintiff's

12

claim that Defendant Vinson violated his rights appears to be based upon her denial of two Informal Resolution Requests Defendant filed.

A "grievance procedure does not confer any substantive constitutional right upon prison inmates." *Barrett v. Correctional Medical Services, Inc.*, 2008 WL 413841, at *2 (E.D. Mo. Feb. 13, 2008) (*quoting Hoover v. Watson*, 886 F.Supp. 410, 418 (D. Del. 1995)). The denial of an Informal Resolution Request is "insufficient to impose liability" and does not result in a constitutional violation. *Rowe v. Norris*, 198 F.Appx' 579 (8th Cir. 2006); *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002). Accordingly, Defendant Vinson could not have violated Plaintiff's constitutional rights when she denied his Informal Resolution Requests.

Additionally, Plaintiff has not provided the Court with any facts indicating that Defendant Vinson was personally responsible for any alleged violation of his constitutional rights, and without such "a causal link," Defendant Vinson cannot be liable for any alleged constitutional violation. *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (*quoting Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)). As Defendant Vinson cannot be liable for her denial of Plaintiff's Informal Resolution Requests, and as Plaintiff has failed to allege that she had any personal involvement in the alleged deprivation of his constitutional rights, Defendant Vinson's Motion must be granted.

## IV.  CONCLUSION

Plaintiff has failed to introduce any evidence which would enable a jury to return a verdict for Plaintiff on his claims that Defendant Babich failed to diagnose or treat his IBS, skin lesions or dental problems. *See Anderson*, 477 U.S. at 249. Additionally, Defendant Vinson cannot be

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

liable for the denial of Plaintiff's Informal Resolution Requests, and granting Defendants' Motion is proper.

Accordingly,

**IT IS HEREBY ORDERED** that the Defendant's Motion for Summary Judgment [doc. #19] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for the Appointment of Counsel [doc. #25] is **DENIED as moot.**

Dated this 3rd Day of April, 2008.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com